# Handley's Estate.

*Will—Life estate—Devise.*

Where a testator gives to his housekeeper "for and during her natural life, the use of the premises occupied by me, together with the use of all the furniture and fixtures now in and upon such premises free of charge," and it appears that at the time of the testator's death a portion of the premises referred to in his will were occupied by him as a residence, and a portion occupied by a bank as a tenant paying a money rental, the will will be construed as giving to the housekeeper the use for life of the portion of the premises occupied by testator, and not an estate for life in the whole property.

Argued Feb. 23, 1904. Appeal, No. 18, Jan. T., 1904, by Annie Hafey, from decree of O. C. Lackawanna Co., Series A, No. 692, dismissing petition for citation in estate of John Handley, deceased. Before DEAN, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Petition for citation.

SANDO, P. J., filed the following opinion:

The petitioner claims that she is a life tenant of the property, known as 420 Lackawanna avenue, in the city of Scranton, and as such is entitled to the use and occupancy of the whole.

Judge Handley died on February 15, 1895, testate, the city of Scranton being at the time of his death his place of residence. By virtue of the will the estate of the testator, real and personal, is under the management and control of his executors and their successors.

The validity of the petitioner's contention must depend on the intention of the testator, under the provisions of whose will she claims. The words of the will to be construed are:

"Item. I give and bequeath to Annie Hafey, my faithful housekeeper, for and during her natural life, the use of the premises occupied by me, situated at No. 420 Lackawanna avenue, Scranton, Pennsylvania, together with the use of all the furniture and fixtures now in and upon said premises free of charge and in addition thereto I hereby bequeath her the

sum of five thousand dollars, and I direct my executors to pay the said Annie Hafey the sum of one thousand dollars per year for and during her natural life, said annual sum to be paid monthly on the first day of each month."

The building, No. 420, Lackawanna avenue, was occupied by the testator as a dwelling house and law office, and by the Merchants' and Mechanics' Bank. The bank occupied on the first floor, the large bank room, bank vault, together with the use of the room in the rear for the directors or the officials to transact the business of the bank, and the use also of one coal vault in the front. Judge Handley occupied a portion of the cellar, the hall and rear room on the first floor; and the second, third and fourth floors for dwelling purposes.

After Judge Handley died, the bank continued to occupy the part of the building leased and used for banking purposes; the executors collected and distributed the rents, as by the will directed; and the petitioner occupied the part used by testator before his death and used the furniture and fixtures until August 4, 1900, when the building was demolished by an explosion, the cause unknown.

The testator's executors have from the date of his death, until August 4, 1900, collected the rents from the bank, and in their annual account, have credited the same among the assets of the estate.

The petitioner claims, under the provisions of the will, a life estate in the land and building, and the rents heretofore collected by the executors from the Merchants' and Mechanics' Bank, the tenant occupying the building before it was destroyed, and also any rents which may be hereafter collected, and for use and occupancy.

In Hunter's Estate, 6 Pa. 106, COULTER, J., says:

"If anything is distinctly and authoritatively settled in our law, it is, that in the construction of wills the intent of the testator, collected from the words and language of the whole will, must be the guide to legal conclusion, and the governing principle of judgment. The intent must therefore be gathered from the words of the will, as such words are understood and accepted by the common mind." Again he says:

" It is true, that in cases where the courts have established a construction upon a given collocation of words, such decision

would be entitled to great respect and consideration, where words of similar collocation, and like import, occurred in another will; but it would only be regarded as a key and help to the true construction. Shades of difference, will always occur, and therefore, as absolute authority, cases are of little authority in the true construction of testamentary dispositions by will."

Wills must be conformable to the rules of law; but this is not and cannot be applied to the construction of words; it relates to the nature and extent of the estate or interest granted; Bagshaw v. Spencer, 2 Atk. 577.

The plain and unambiguous words of the will must prevail and cannot be controlled or qualified by any conjectural or doubtful constructions growing out of the situation, circumstances or condition of the testator, his property or the natural objects of his bounty: Schouler on Wills, 520.

All things being equal, the natural and literal import of words and phrases is presumed to have been intended; each word is to have its effect, if the general intent be not thwarted thereby: Schouler on Wills, 529.

The inconvenience or absurdity of a devise is no ground for varying the construction, where the terms of it are unambiguous; nor is the fact, that the testator did not foresee all the consequences of his disposition a reason for varying it: 3 Jarman on Wills, 706.

The first thing is to ascertain what the object of the testator is; the next, whether it is such as the rules of law and equity admit. This is the substance of the common sense and the law on the subject.

In the present case, what was the true intent of the testator, according to the common acceptation and meaning of the words which he uses for the purpose of expressing that intent?

The petitioner is described as the testator's faithful housekeeper. It was the testator's intention to provide her with a home at the place where she then lived, with the furniture and fixtures to make her comfortable. His bequest of $1,000 a year was for maintenance and the bequest of $5,000 was for emergencies. If he had intended she should have in addition the rent received from the bank, he would have said so. In this case there seems to be no ambiguity latent or patent.

The intention of the testator was to give the petitioner, " for

and during her natural life, the use of the premises occupied by " him " situated at 420 Lackawanna avenue," and not an estate for life.

If he had intended to give the whole property the language would have been " I give and bequeath to Annie Hafey, my faithful housekeeper, for and during her natural life the use of the premises, situated at 420 Lackawanna avenue, together with the use of all the furniture and fixtures now in and upon said premises."

That he did not intend to give the whole is very clear because the gift is limited to " the premises occupied by me." Either these words must be expunged from the will, or they must be given their full weight.

What then were the premises occupied by the testator? He certainly did not occupy that portion of the building used by the bank. The possession of that portion of the building was not in him but in the bank. The occupancy was not in him. When he used the words of limitation, it was with some purpose. Had he intended otherwise, he would have said so.

The subject of the gift is described as " the use of the premises," and the premises are defined by the phrase " occupied by me," and " situated at 420 Lackawanna avenue."

The estate given to the petitioner is expressly limited to an estate for life in the premises " occupied by me," and we have no difficulty in reaching the conclusion that the intention was that she should take only an estate for life, in the part or portion occupied by the testator.

The testator has used apt and explicit words of limitation to express his intention. If he had intended to give a life estate in the whole building he would have expressed that intention by the use of equally apt and explicit words and terms.

By the terms of the will the petitioner took an estate for life in the " premises " occupied by the testator. The estate in the premises cannot be enlarged to an estate for life in the entire property, 420 Lackawanna avenue.

The words " the use of the premises " and " occupied by me " are expressive of the purpose for which the testator desired the property to be used and are explanatory of his bounty, and clearly express a restrictive condition or stipulation that cannot be construed in any other way.

A larger estate will not be implied where a smaller one is expressly granted: Schouler on Wills, 632.

The most comprehensive words of description applicable to real estate are tenements and hereditaments, as they include every species of realty, as well corporeal as incorporeal. The word "lands" is not equally extensive; it would not comprehend incorporeal hereditaments: 2 Jarman on Wills, 382.

The word "premises," which literally denotes that which is already stated, should depend for its breadth upon the expression to which it refers: Schouler on Wills, 553.

A devise of the house "now occupied by me," or my house lot will not include adjoining property occupied by tenants: Brown v. Saltonstall, 44 Mass. 423.

In Doe v. Parkin, 5 Taunt. 321, and 1 Marsh. 61, the testator devised in these words: "All my messuages in T., now in my occupation." The testator had two messuages in T., of which he occupied only one; and it was held that only one passed by the devise.

In the present case the words of the bequest are clear and entirely sufficient to control their obvious meaning. In no sense could the testator be considered to have the occupation of that part of the building in the tenure of the bank. What the testator did occupy was certain. There is no ambiguity in the will itself. The intention and the language are both clear. The words used are not the land or building, but "the use of the premises occupied by me." He meant merely to limit and locate the premises "occupied by" him. "Occupied" implies actual possession, not constructive possession. This limitation must stand as it was, true or false, at the time it was made. If the testator did not occupy the part in the tenure of the bank at the time he made his will, though he might afterwards have acquired the actual possession of it, yet it would not pass under the will. The lease to the bank was for rent reserved in money. Had Judge Handley entered without leave of the tenant, he would have been liable as a trespasser.

The word "occupied" has a legal meaning. It is where possession and management is in a person.

The bank, therefore, and not the testator, must be considered as in possession and occupation of such part of the building in question as was described in its lease.

The application of the words to the proper subject of the bequest support the inference that the testator meant to give a life estate in the " premises occupied by " him, and not in the entire building.

The term " occupied " both in a popular and legal acceptation, has a known, certain and definite meaning. It cannot be said that any person occupies a building which is in the tenure, actual possession and management of another. The term, in legal acceptation, implies use and possession. We must understand the " premises occupied by me " as used in the common and popular sense, according to which the part of the building in possession of the bank was separate and distinct from that occupied by the testator.

There is no question, whether the testator was in point of fact, in the actual possession of the part used by the bank, at the time of making his will, or at the time of his death.

We are asked to say that the premises in the occupation of the testator meant also the part in the occupation of the bank as a tenant. It would be requiring us to understand more by the phrase " premises occupied by me " than the ordinary or legal sense would warrant. It would be extending it to a part in the possession of another. The phraseology of the bequest shows that the testator intended to limit it to that of which he himself was then in possession.

By applying the bequest to the premises in the actual possession of the testator, there would be harmony and consistency between the thing and the subject, and every part of the description. The incongruity would be created by applying the bequest of the premises, which were in the possession of the bank. The convenient enjoyment and use of the premises devised show no necessity for the part used by the bank.

There can be no doubt that the only subject in the mind of the testator, when he made the gift, was " the use of the premises occupied by " him as it then was and always had been, and that he intended to give the petitioner the use of the premises, " together with the use of all the furniture and fixtures now in and upon said premises free of charge," and that he did not intend to include in the gift a life estate in the building situate at 420 Lackawanna avenue. The word " now "

seems to be used emphatically, so as to leave no possible doubt as to the identity of the thing devised.

In Wusthoff v. Dracourt, 3 Watts, 240, the Supreme. Court construed a devise of a house, in which the testator said, " reserving, however, two of the rooms of said house for the use and during the life of W. I devise by this fourth article, that the widow W. may have the choice of those two rooms which shall best suit her, because I desire that the said W. should be sure of a shelter during the time she may have to live." This reservation, the court says, vests in W. an estate in the two rooms for life, of which she may make any disposition. It does not create a mere easement for her personal use ; she might occupy it herself, or let it to another, receiving from it the rent it produces.

We think we perceive the clear intent of the testator manifested in the whole, and every provision of the will taken together, and that is the light we have followed in arriving at the conclusions we adopt.

·The intention of the testator was to give Annie Hafey, the petitioner, the use for life of the premises occupied by him " situate at " No. 420 Lackawanna avenue, and not an estate for life in the whole property.

Entertaining these views we hold that the petitioner is not entitled to the specific relief prayed for and her petition is therefore dismissed.

*Error assigned* was the decree dismissing the petition.

*S. B. Price*, with him *H. A. Fuller*, for appellant.

*L. A. Watres* and *H. W. Palmer*, for appellee, were not heard.

PER CURIAM, March 7, 1904 :

We can add nothing of value to the able opinion of the court below. On that opinion the decree of the orphans' court is affirmed.